UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 19-cr-40011-TSH |
| | ) | |
| JORDAN WINCZUK | ) | |
| | ) | |

## **DEFENDANT'S SENTENCING MEMORANDUM**

On October 21, 2021, Jordan Winczuk entered a plea of guilty as to both counts of the Indictment and sentencing was scheduled for February 18, 2022.  There is no plea agreement, as a number of issues are disputed by the parties—most notably, the applicable mandatory minimum sentence provided by 18 U.S.C. § 2251(e) as to Count 1.  For the reasons that follow, the defense requests that the Court impose a sentence totaling 35 years imprisonment: a mandatory minimum 25 years imprisonment as to Count 1, to be followed by a consecutive mandatory minimum 10 years imprisonment as to Count 2.  As described below, 35 years imprisonment falls within the advisory guidelines sentencing range and appropriately balances the factors established under 18 U.S.C. § 3553(a).

## **The Mandatory Minimum Sentence Provided by 18 U.S.C. § 2251(e)**

The threshold question in this case concerns the applicable mandatory minimum sentence provided by 18 U.S.C. § 2251(e).  Having been convicted of attempted sexual exploitation of children in violation of 18 U.S.C. § 2251, the pre-sentence report (PSR) concludes that Mr. Winczuk has "2 or more prior convictions . . . under the laws of any State relating to the sexual exploitation of children" and therefore faces a mandatory minimum sentence of 35 years

1

imprisonment.  PSR ¶72.  Mr. Winczuk submits that a closer examination of the statutory text and the prior convictions at issue do not establish that he has two qualifying convictions.

Although Winczuk does have two prior New Jersey criminal convictions (PSR ¶72, 73), those offenses do not qualify for this sentencing enhancement provision because they are not offenses relating to the sexual exploitation of children.  The term "'sexual exploitation of children' as contained in § 2551 (e) means the production of child pornography." *United States v. Schopp*, 938 F.3d 1053, 1062 (9th Cir. 2019).  Neither Winczuk's conviction for sexual assault under N.J.S.A. 2C:14-2c(4) (PSR ¶72), nor for endangering the welfare of a child under N.J.S.A. 2C:24-4(5)(a) (PSR ¶73), "relate to the sexual exploitation of children" because they do not relate to the production of child pornography.

In contrast to the language establishing a 35 year mandatory minimum sentence where a defendant has "2 or more prior convictions . . . under the laws of any State relating to the sexual exploitation of children," § 2551 (e) also sets a mandatory minimum sentence of 25 years where a defendant has one prior qualifying conviction "under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." Under this broader formulation, Mr. Winczuk concedes that a mandatory minimum sentence of 25 years imprisonment under this provision applies.

The ambit of § 2551 (e)'s recidivist provisions appears to be a matter of first impression in this circuit.  However, the Ninth Circuit's detailed analysis of the issue in *Schopp* clarifies why the multi-conviction enhancement provision of § 2251(e) should be read narrowly. In *Schopp*, the Ninth Circuit used the categorical approach to determine whether the defendant's

2

prior convictions qualified as predicate offenses for the 35-year mandatory minimum sentence provision of § 2251(e). *Schopp*, 938 F.3d at 1058-59. Under that approach, the court first defined the federal generic offense of "sexual exploitation of children." *Id*. The Court began by noting that "[s]ection 2251 is titled '[s]exual exploitation of children' and sets forth a series of federal offenses, all related to the production of visual depictions of minors engaging in sexually explicit conduct." *Id*. at 1059. It found that the statute's section heading "largely resolve[d] [the] question concerning the federal generic definition of 'sexual exploitation of children.'" *Id*. at 1060. By titling the § 2251 "[s]exual exploitation of children," the court reasoned, Congress "signaled that the enumerated federal offenses in § 2251 constitute the federal understanding of the term "sexual exploitation of children," and that the term as subsequently used in § 2251(e) bears that same meaning." *Id*. The court held that

> Because § 2251 is titled "[s]exual exploitation of children," the enumerated elements of the offenses described in the statute constitute the definition of the offense bearing that name. All of the offenses described in § 2251 concern visual depictions of children engaging in sexually explicit conduct, with "sexually explicit conduct" defined in a separate statute. See 18 U.S.C. §§ 2256(1)–(2). We accordingly hold that the federal generic definition of "sexual exploitation of children" is defined within § 2251 as the production of visual depictions of children engaging in sexually explicit conduct, or put simply, the production of child pornography.

*Id*. at 1060-61.

Although the statute heading was an "independently sufficient basis" for the court's conclusion, the court noted that its federal generic definition "comports with other federal statutory definitions; the U.S. Sentencing Guidelines; state criminal codes; and Black's Law Dictionary." *Id*. at 1061.

The court then moved to the next step in the categorical approach – comparing the defendant's statute of conviction to the federal generic definition. *Id*. at 1062-63. It held that the defendant's convictions for "various degrees of sexual assault and sexual abuse of minors" were not a categorical match to the federal generic definition because none of the state statutes of conviction had as an element "the production of *visual depictions* of children engaging in sexually explicit conduct." *Id*. (emphasis in original).

The Ninth Circuit rejected the government's argument that "the term 'relating to,' which appears before "sexual exploitation of children," extends the reach of the enhancement to a broader range of state criminal offenses involving sexual abuse of children but lacking any visual depiction component." *Id*. at 1064. The court looked to prior cases from the Ninth Circuit and the Supreme Court and determined that "[t]he language of § 2251(e) tugs in favor of reading 'relating to' as reaching various kinds of conduct involving the central substantive concept, 'sexual exploitation of children,' but not activity that does not include the key visual depiction aspect of that term." *Id*. at 1067. The court noted that "the term 'sexual exploitation of children' heads all offenses included in § 2251," which "anchor[s] the meaning of the 'relating to' language to the definition of the generic federal offense as the production of child pornography." *Id*. The court looked to the statutory materials and determined that Congress "considers 'sexual exploitation' and 'sexual abuse' to be distinct categories of offenses," and that "broadening the scope of the statute through the 'relating to' clause . . . [would] obliterate the careful distinction drawn in the statute between 'sexual exploitation of children' and other forms of child sexual abuse." *Id*. at 1068. It held:

> the "relating to" term in § 2251(e) encompasses state offenses that are a categorical match to the federal offense of production of child pornography

and state offenses involving the production of such pornography, that is, the
conduct enumerated in § 2251's various subsections. It does not include
offenses that entirely lack the visual depictions element that separates
"sexual exploitation of children" from other forms of child abuse in the
federal criminal offense panoply.

*Id*.

To be sure, *Schopp* conflicts with decisions from other circuit courts. *See United States v.
Mills*, 850 F.3d 693, 697 (4th Cir. 2017) (defining the term as "tak[ing] advantage of children for
selfish and sexual purposes"); *United States v. Smith*, 367 F.3d 748, 751 (8th Cir. 2004) (defining
"the term [as] unambiguously refer[ring] to any criminal sexual conduct with a child"); see also
*United States v. Pavulak*, 700 F.3d 651, 673–74 (3d Cir. 2012) (concluding that the relevant prior
state convictions "relat[e] to the sexual exploitation of children" but not defining the substantive
term); *United States v. Randolph*, 364 F.3d 118, 122 (3d Cir. 2004) (same). However, unlike
*Schopp*, these cases do not take into account "the section heading in conjunction with the text of
the statute, . . . other uses of the term in federal statutes, state criminal codes, [or] the
Guidelines." *Schopp*, 938 F.3d at 1062, n. 5. The other definitions also "obliterate the careful
lines Congress has drawn demarcating 'sexual abuse' from 'sexual exploitation' by failing to
grapple with the 'exploitation' component of the federal offense and focusing exclusively on the
'sexual abuse' aspect." *Id*. In contrast, *Schopp* is better reasoned and more faithful to the plain
text of § 2251. In the absence of First Circuit precedent, this Court should look to *Schopp* for the
definition of the federal generic offense of "sexual exploitation of children."

Like the defendant in *Schopp*, Mr. Winczuk's prior convictions are not "state offenses
involving the production of [child] pornography." *Id*. at 1068. New Jersey Statute 2C:14-2c(4),
titled "Sexual assault," provides that a person is guilty of sexual assault if he commits an act of

"sexual penetration" with another person and "the victim is at least 13 but less than 16 years old and the actor is at least four years older than the victim." New Jersey Statute 2C:24-4b(5)(a), titled "Endangering welfare of children," provides:

> Any person who knowingly receives for the purpose of selling or who knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers or agrees to offer, through any means, including the Internet, any photograph, film, videotape, computer program or file, video game or any other reproduction or reconstruction which depicts a child engaging in a prohibited sexual act or in the simulation of such an act, is guilty of a crime of the second degree.

Neither of these offenses involve the production of child pornography. Therefore, neither conviction is a categorical match to the generic federal offense of "sexual exploitation of children" and neither can serve as a predicate offense for the purposes of the multiple-conviction enhancement of § 2251(e).

### Application of Sentencing Guidelines

The court must "begin sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, the applicable GSR is contested due to the inclusion of certain information that does not constitute relevant conduct under the Guideline definition. The PSR includes several paragraphs (¶¶25-28) of uncharged offense conduct regarding two additional victims referred to as "fery6000" and "Matt," which form additional groups and ultimately serves to increase the offense level. As argued herein, this information is not relevant conduct and should be excised from the PSR.

"Relevant conduct" is defined by the Guidelines in two ways. It includes "all acts and omissions committed ... or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of

attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).

Separately, for those offenses "of a character for which § 3D1.2(d) would require grouping of

multiple counts," relevant conduct also extends to "all acts and omissions ... that were part of the

same course of conduct or common scheme or plan as the offense of conviction[.]" §

1B1.3(a)(2).

This last provision does not apply because, under § 2G2.1, offenses involving the sexual

exploitation of minors are explicitly excluded from § 3D1.2(d)'s multiple-count grouping rule.

Therefore, Mr. Winczuk's offense is not one "for which § 3D1.2(d) would require grouping of

multiple counts." § 1B1.3(a)(2).

The question then becomes whether, under § 1B1.3(a)(1), Mr. Winczuk's conduct as to

the "fery6000" victim and "Matt" occurred during the commission of, in preparation for, or in

the course of attempting to avoid detection or responsibility for the attempted exploitation of the

Worcester victim.  As described at PSR ¶¶9-15, all contact between Mr. Winczuk and the

Worcester victim took place between January 18, 2018, and January 30, 2018.  Records provided

by the government establish that all communications between Mr. Winczuk and "fery6000" took

place between February 8, 2018 and February 26, 2018.  Likewise, records provided by the

government establish that Mr. Winczuk's communications with "Matt" occurred in two discrete

periods of time: the first taking place in June 2017 and the second occurring between January 3,

2018 and January 14, 2018.[1]

---

[1] Records reflect that Mr. Winczuk sent additional messages to Matt in July 2017, August 2017, September 2017, and October 2017.  However, these messages went unanswered.  Similarly, Mr. Winczuk also sent messages on January 25, 2018, and February 10, 2018, but received no response.

Accordingly, Mr. Winczuk's conduct as to "fery6000" and Matt" did not occur "during," "in preparation for," or "in the course of attempting to avoid detection or responsibility for" his attempted exploitation of the Worcester victim.  In the absence of any temporal or factual nexus, Mr. Winczuk's conduct as to "fery6000" or "Matt" is not relevant conduct and should be removed in its entirety. See *United States v. Castillo*, 981 F.3d 94 (1st Cir. 2020); *United States v. Schock*, 862 F.3d 563 (6th Cir. 2017); *United States v. Wernick*, 691 F.3d 108 (2d Cir. 2012).

Once removed, the offense conduct is properly limited to the charged offense (the "Worcester victim"), no grouping is necessary, and the offense level is 38.  ¶¶34-40.  After accounting for timely acceptance of responsibility, the total offense level is 35.  Because Mr. Winczuk's Criminal History Category is V by virtue of U.S.S.G. §4B1.5, his GSR is 262-327 months imprisonment as to Count 1.  The GSR as to Count 2 is the mandatory minimum 120 months required by statute.

### Winczuk's Background and Personal Circumstances

Jordan Winczuk is 37 years old and hails from New Jersey, where his family still resides. After graduating from high school, Mr. Winczuk had aspirations of becoming a first-responder. He attended a firefighter and Emergency Medical Technician (EMT) training program at a local fire academy and later completed more specialized EMT training.  In addition to the time and expense of pursuing training, Mr. Winczuk also sought out employment working for a medical transportation company and volunteering with local first responders.  He even went so far as to obtain a tattoo of the star of life, the symbol of emergency medical services.

He then attempted to become a licensed EMT but was unable to pass the examination. This setback greatly affected Mr. Winczuk, who was so highly motivated to work in this field.

He experienced anxiety and panic attacks.  He was arrested and eventually spent several years in custody.  While in custody, Mr. Winczuk sought out mental health treatment and participated in sex offender programming.  His efforts continued upon his release, as he regularly attended group counseling sessions at a local university.  Notably, though, it appears Mr. Winczuk's commission of this offense occurred at a time when he was no longer in active treatment.

Although Mr. Winczuk's family has been unable to visit him since his transfer to Massachusetts, they remain supportive.  One sister, Jessica Winczuk, describes him as a "great brother and son."  *Letter of Jessica Winczuk.*  His other sister, Joanna Winczuk, writes of "how important Jordan is to our family" and how they have relied on him for help in taking care of their disabled mother.  *Letter of Joanna Winczuk.*  His mother, Carol Winczuk, reflects on the impact her son's incarceration has had on their family and her desire to reunite with her son "before I die."  *Letter of Carol Winczuk.*

<u>**Argument**</u>

Regardless of how the Court applies the Guidelines, 35 years is "sufficient, but not greater than necessary" to accomplish the goals of sentencing under 18 U.S.C. § 3553(a).  Those goals will be considered in turn.

Under 18 U.S.C. § 3553(a)(1), the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  The nature and circumstances of this offense are, to be sure, extremely serious.  The offense conduct involves Mr. Winczuk's online communications with an 11 year old boy, in which he repeatedly solicited the minor to send him lascivious photos.  This conduct is made all the more troubling by Mr. Winczuk's

9

criminal history, which includes prior convictions for sex offenses.  Mr. Winczuk's conduct was reprehensible and the defense does not suggest otherwise.

Still, it must be noted that Mr. Winczuk's efforts were not successful.  The degree of victimization present here is distinguishable from cases involving contact offenses.  To the extent that Mr. Winczuk's prior history weighs in favor of greater punishment, that is accounted for in two ways: (1) by the 25 year mandatory minimum sentence provided under the recidivist sentencing provisions of 18 U.S.C. § 2251(e), and (2) by the mandatory minimum sentence required by Count 2, which mandates a 10 year consecutive sentence due to Mr. Winczuk's status as a registered sex offender.

Under 18 U.S.C. § 3553(a)(2)(A), the Court must also consider the need for the sentence to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  As discussed above, the length of the proposed sentence reflects the severity of the crime but recognizes that the circumstances of the offense do not necessitate exceeding the weighty mandatory minimum sentences.

As to the need under 18 U.S.C. § 3553(a)(2)(B) for the sentence imposed to "afford deterrence to criminal conduct," the proposed sentence will promote both specific and general deterrence.  The length of the proposed sentence far exceeds the prior sentence received by Mr. Winczuk and will be sufficient to deter him from reoffending.  Indeed, as will be discussed in more detail below, it will incapacitate him until he is elderly, greatly reducing the likelihood of recidivism.  Moreover, the obvious severity of a 35 year sentence will promote general deterrence to any individual who might be inclined to engage in this sort of activity.

Under 18 U.S.C. § 3553(a)(2)(C), the Court must also consider the need "to protect the public from further crimes of the defendant."  The defense acknowledges that Mr. Winczuk's past convictions raise concerns of recidivism and protection of the public.  However, given that Mr. Winczuk is 37 years and the proposed sentence would incarcerate him until he is well into his sixties, there is ample to reason to conclude that he will pose a far lower risk of recidivism.[2] Academic literature examining the relationship between age and recidivism in sex offenders has consistently found that recidivism rates decline significantly as offenders enter their more advanced years.[3]  Additionally, at whatever time Mr. Winczuk completes his imprisonment, he will face civil confinement under 18 U.S.C. § 4248 as a sexually dangerous person.  Should the government contend that Mr. Winczuk poses a risk to the public in his waning years, that matter can be fairly heard prior to his release—and with the benefit of considerably more information than is available to the court today.

Under 18 U.S.C. § 3553(a)(2)(D), the Court must also consider the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  Mr. Winczuk recognizes the need to engage in sex offender treatment and intends to avail himself of such treatment while serving his sentence.

---

[2] Prisoner are eligible to receive up to 54 days of good time for each year of the sentence under 18  U.S.C. § 3624(b).  Should Mr. Winczuk receive a total of 35 years imprisonment, he would potentially be eligible to receive 1890 days of good time and be eligible for release after serving approximately 30 years of the sentence, when he is 67 years old.  Due to the nature of his convictions, Mr. Winczuk is *not* eligible for additional earned time credits under the recently enacted First Step Act.

[3] Nationally recognized studies have reported that the average sexual recidivism rate for sixty year-olds falls below 6% *See* Barbaree, H. E. & Blanchard, R. (2008), *Sexual deviance over the lifespan: Reductions in deviant sexual behavior in the aging offender*, in D. R. Laws & W. O'Donohue (Eds.) (pp. 37–60) *Sexual deviance: theory, assessment, and treatment*, New York; Guilford; Barbaree, H. E., Blanchard, R. & Langton, C. (2003), *The development of sexual aggression through the lifespan*, in R. A. Prentky, E. Janus & M. Seto (Eds.), *Sexually coercive behavior*. New York: Annals of the New York Academy of Sciences (Vol. 989);  Barbaree, H. (2010), *The Effects of Aging on Sex Offender Recidivism*,  Presented at the Department of Health Sex Offender Commitment Program. Seaside, CA.

Given the length of the proposed sentence, there will be adequate time and opportunity for him to do so.

Lastly, pursuant to 18 U.S.C. § 3553(a)(6), the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." On a nationwide basis, the Judiciary Sentencing Information (JSIN) tool reflects that during the last 5 years, there have been 19 offenders with a primary guideline of §2G2.1, a final offense level of 35, and with a CHC V.[4] Both the average and the median sentence imposed as to this cohort of offenders was 300 months (25 years). Perhaps unsurprisingly, cases in this district involving violations of § 2251 and sentencing ranges of 35+ years are uncommon. A review of cases in this district involving § 2251 convictions yielded only a handful of cases wherein the defendant received a longer sentence than proposed here. Unlike Winczuk's conduct here, each of these cases involved the recording of hands-on sexual abuse by the defendant.[5] Thus, the available data shows that while the proposed sentence is not only higher than the typical sentence for similarly situated offenders—necessarily so, due to the applicable mandatory minimum sentences—it more than adequately reflects the seriousness of the offense when considered against the sentences imposed on individuals convicted of recording themselves committing sexual assault of minors.

## Conclusion

---

[4] Available at https://jsin.ussc.gov/
[5] *United States v. Decarolis*, 19-cr-40038-TSH (38-year sentence for defendant convicted of recording, and distributing, videos of himself sexually assaulting numerous minor children); *United States v. Germaine*, 17-cr-30010-MGM (35-year sentence for defendant convicting of recording, and distributing, images of himself sexually assaulting a five year-old girl); *United States v. Toronto*, 17-cr-10307 (40-year sentence for defendant convicted of recording himself sexually assaulting two young boys); *United States v. Gendron*, 13-cr-30036 (50-year sentence for defendant convicted of recording himself sexually assaulting four young girls).

Jordan Winczuk committed serious crimes, made all the more serious by his prior criminal history.  As a result of that history, the Court is now required to sentence him to a minimum of 25 years imprisonment on Count 1, to be followed consecutively by 10 years on Count 2.  This is a profoundly severe, life-altering sentence that will deprive Mr. Winczuk of most of his productive life.  There being nothing so egregious in the circumstances of the offense as to warrant exceeding the applicable mandatory minimum periods of imprisonment, the proposed sentence of 35 years is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

> JORDAN WINCZUK
> by his attorneys
> */s/ Scott Lauer*
> */s/ Tim Watkins*
> Scott Lauer (BBO #667807)
> Tim Watkins (BBO #567992)
> FEDERAL PUBLIC DEFENDER OFFICE
> 51 Sleeper Street, 5th Floor
> Boston, MA 02210
> 617-223-8061 (phone)
> 617-223-8080 (fax)
> Scott_Lauer@fd.org

## Certificate of Service

I, Scott Lauer, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") via electronic mail.

Date: February 16, 2022                                      */s/ Scott Lauer*
                                                             Scott Lauer