UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JORDAN WINCZUK<br><br>   Defendant | Case No.: 19-CR-40011-TSH |

# GOVERNMENT'S SENTENCING MEMORANDUM

Pursuant to 18 U.S.C. §3553(a), the United States hereby requests that this Court impose a term of 35 years' incarceration on Count 1 and a consecutive term of 10 years' incarceration on Count 2, followed by a lifetime of supervised release. The government submits that this sentence is appropriate under the circumstances of this case, considering the defendant's particularly egregious crimes and his pattern of sexual exploitation of multiple minor victims. Before turning to legal argument, the defendant's course of repeated criminal exploitation of multiple child victims merits detailed review.

## THE WORCESTER VICTIM

In January 2018, the Worcester police were contacted by the mother of an 11-year-old boy. She reported that she heard her son's phone alerts going off late at night, so she checked his phone. She found an Instagram chat between her 11-year-old son and WINCZUK, who was using an Instagram account in the name of "Joey Carson." That chat contained sexually explicit language and requests by WINCZUK that the Victim provide images of his genitals. Victim's

mother observed a chat that began with WINCZUK asking Victim about his relationship with "Joey's" sister.[1]

According to the child, he was initially communicating via a social media platform called "LiveMe" with a person he believed to be a 13-year-old girl named Samantha. He thought that "Joey" was Samantha's brother. The police viewed the Instagram chat that had been preserved on the child's phone. The exchange via Instagram began on January 16, 2018. The Victim informed WINCZUK that he was 11 years old and WINCZUK said that he was "25." At the time, the defendant was actually 34 years old. WINCZUK began grooming the Victim, endearing himself to Victim by asking about school and immediately offering "if you need anything just message me." The Victim shared a photograph of his face. When Victim shared that he was teased at school by kids who said he "looked like a girl," WINCZUK told Victim he was a "good looking kid." WINCZUK also "warned" Victim that another Instagram user that Victim was "following" was "a pedo" who "likes little boys" and recommended that Victim "block" that other user. WINCZUK offered Victim advice about how much sleep to get and the importance of school, repeatedly referring to Victim as "little bro" and offering, "If you need anything tell me."

After several days of this grooming, Victim shared that he was having a tough time because of problems at school and "puberty." WINCZUK immediately began asking questions about Victim's body, including whether he had hair on his genitals, and asked Victim to send a picture of the genital hair. When Victim declined, WINCZUK again offered to answer any of Victim's questions. After approximately a week of their chats, WINCZUK instructed Victim to wear

---

[1] The defendant did not have a teenage sister.

sweatpants without underwear and asked Victim to "show him." WINCZUK told Victim "not to be nervous" about showing him "anything," and asked Victim to show his "stuff" (referring to genitals and the "hair situation") and said to Victim, "bet you have a big one." He asked Victim about erections and masturbation, telling Victim that masturbation is normal, and then instructed Victim on how to masturbate. WINCZUK told Victim that "if you feel like you're doing it wrong you can show me." Over the course of the chat, WINCZUK repeatedly insisted on viewing Victim's genitals even after Victim said he was "not comfortable showing anything below the waist." WINCZUK ultimately described sexual activities he wanted to engage in with Victim, which all make it clear that his interest in Victim was sexual and not for the stated reason of "checking him." ("Would you let me kiss the tip?"… "Now I want you here…and snuggle…with your clothes off"… "I will pull your pants down and beat you"… "show me your cute little butt cheek…")

WINCZUK repeatedly asked Victim about erections and for details about his penis (commenting at one point that he bet it was "cuter than an old man's"), and asked Victim to send him a picture of his penis. WINCZUK told Victim "Don't be nervous," and stated that Victim was a "book of excuses" when Victim did not send the requested photos. When Victim said it was too dark in his room to take a photo, WINCZUK instructed him to "go to the bathroom," all under the guise of "checking" Victim's penis.[2] In response, Victim sent some black pictures, claiming it was too dark to take a picture. WINCZUK told Victim that he "loved him" and said "I hope I didn't scare you."

---

[2] "Joey Carson" made references to being an EMT during the chat with Victim.

The next day, WINCZUK asked "are you able to take the picture… the one you were supposed to." When Victim said he did not want to, the suspect told him "your (sic) a cool kid" and then asked him "did it get hard today." WINCZUK again told Victim that he loved him and said it felt like they were brothers. In response to requests from WINCZUK for photos of Victim's arms and abs, Victim sent photos of each via Instagram. WINCZUK asked again for a picture of "the tip" and when Victim said he wasn't comfortable showing anything below the belt, the suspect told him not to be nervous, "just go to the bathroom and do it really fast." WINCZUK later asked Victim if he would let him "kiss the tip," instructed him again to masturbate, and asked for proof that Victim was masturbating in the form of pictures of his pants and underwear down. The suspect told him to "just put your hand around it and show me…just the tip." In a later conversation, WINCZUK discussed what they would do if Victim visited, offering to let Victim drive his truck and saying that they would snuggle. The suspect repeatedly asked Victim to send pictures of his testicles and his penis.

Based upon the Instagram chats, it appears that Victim stopped responding to "Joey's" texts for a few hours. When they began chatting again, Victim apologized for ignoring WINCZUK and WINCZUK acknowledged, "I was pushing you to do something that upsets you." He then told Victim "just show me one time and it's over…" "I'm not going to say anything or tell anyone…" "you can trust me." WINCZUK again discussed Victim spending the night at his place in New Jersey,[3] telling Victim that he (Victim) would have his shirt off, his "little butt out" and that WINCZUK would "rub them until you fall asleep." WINCZUK asked if Victim would let him "wash his grapes" and said "you will probably get hard." Each time Victim would

---

[3] "Joey Carson" first told Victim that he lived in New Jersey on January 30, 2018, in response to a question from the mother posing as Victim.

hesitate or object, the suspect would type "jk" or "lol."  He then wrote "Okay seriously would you let me kiss you."  WINCZUK continued to propose things he would do to Victim, including, "tongue kiss you," "lick your grapes," "get you hard," and "tickle your grapes."  He suggested plans for Victim to visit him in the summer and spoke with Victim about school or video games.  WINCZUK repeatedly instructed Victim to "freeball" and asked for proof through pictures.  Interspersed with this were photos of emergency vehicles and firearms and claims that he (WINCZUK) was an EMT/ firefighter/ canine officer.

    After approximately two weeks of Instagram chats, which occurred at all hours of the day and night, Victim's mother found his phone and read the chats.  Beginning on or about January 29, 2018, Victim's mother then posed as her son and continued the conversation with "Joey," asking for pictures of his face, tattoos, and proof of his real name.  WINCZUK sent pictures of his face and tattoos, said that his real name was "Jordan," and sent a picture of a New Jersey driver's license showing only a first name and middle initial, "Jordan J."  The mother asked many questions of the suspect, such as where he went to school, where he trained to be a cop and firefighter, and where he worked.  She, still posing as Victim, suggested that they get together and asked where he lived.  As he answered those questions, the mother took screen shots of his responses.  Instagram alerts users when their images are captured via screen shot, and the suspect questioned that.  After speaking with mother for a while, he questioned whether he was still speaking to Victim and said he was "freaked out" and believed that Victim was having him arrested.

    Victim's mother contacted the Worcester Police Department ("WPD") on or about January 30, 2018 and they identified "Joey Carson" as the defendant, Jordan WINCZUK.  The images of "Joey's" face and tattoos that were sent from "joeycarson9807" to Victim's Instagram

account match images of WINCZUK's face and tattoos that were on file with the New Jersey State Board of Prisons.

## WINCZUK'S PRIOR CONVICTIONS

During the relevant time period, WINCZUK was on parole for two convictions in the state of New Jersey.  In 2008, he was charged in Camden County Superior Court, Indictment 958-03-09, a 28-count indictment alleging that he sexually assaulted four separate minors.  In 2010, he pled guilty to one count of sexual assault on a person between the ages of 13 and 16 by a defendant 4 years or more older, in violation of NJ Statute 2C: 14-2C(4).  In 2009, while on release pending the resolution of the 2008 sexual assault charges, WINCZUK committed a new offense and was charged with endangering the welfare of a child by file sharing of child pornography, Camden County Superior Court accusation number 10-11-3136.  He pleaded guilty to that charge as well in 2010.  For both offenses, he was sentenced to concurrent five year state prison sentences and parole supervision for life.  Those convictions each triggered a requirement to register as a sex offender in the state of New Jersey.  As a condition of his parole, WINCZUK was prohibited from having internet capable devices or contacting minors

On February 27, 2018, agents executed a search warrant at WINCZUK's residence.  After an hours long search, they found two internet-capable phones hidden in an armchair in WICZUK's living room area, a ZTE Android smartphone and a Kyocera smartphone.

A receipt found in WINCZUK's home showed that the ZTE was purchased for cash at a Walmart in Somerdale, New Jersey on December 16, 2017, 10 days before the "Joey Carson" Instagram account was opened.  The ZTE Android smartphone seized by agents was password

6

protected and therefore could not be opened by investigators, though a Cellebrite analysis identified the phone number associated with that ZTE and determined that Instagram was installed on the ZTE phone. A UUID (universal unique identifier) that was on the ZTE was the same as the UUID recorded by Instagram for the "Joey Carson" account, which indicates that the ZTE found in WINCZUK's chair was the same as the android phone used to connect to the "Joey Carson" Instagram account and message the Worcester victim.

### "MATT"

Agents analyzed the Kyocera phone found in WINCZUK's home.  The social media application "Tango" was installed.  Using the username of "Joseph Carson," WINCZUK exchanged messages with other users in which he solicited the creation of child pornography of other apparent minor boys.  For example, in a chat with a boy (pseudonym of) "Matt" that began in June 2017, "Matt" told the defendant that he was 14years old and sent several pictures of a teenage boy.  "Matt" also referenced "Sam," and asked the defendant several questions about her, such as her age and whether "Sam" was interested in him.  WINCZUK asked "Matt," "Where's my picture- you better pay up." "Matt" then sent a picture of a penis.  WINCZUK later told him he needed "two pictures" and told him to "go to the bathroom."  When "Matt" said he was "done with pictures," the defendant told him, "Just do the two…. Your loss I'll tell her."  On or about January 4, 2018, "Matt" asked WINCZUK if "Sam" was with him.  WINCZUK told "Matt" that Sam had sent pictures for Matt and that Matt would have to "give back," referring to sending images of his own genitals. WINCZUK then sent three images of a girl's naked vulva to "Matt." The first two images, sent at 12:35:14PM, depict a vulva spread apart by two fingers. Based upon the size of the girl and the lack of pubic hair, the girl depicted appears to be pre-pubescent. The third photo, sent by WINCZUK at 12:35:14 PM, depicts the naked genitals of a

young girl wearing a grey sweater. The index finger of a hand wearing the same sweater is penetrating the girl's vagina. Based upon the size of the girl and the lack of pubic hair, she appears to be pre-pubescent.

The Kyocera phone contained dozens of images of pre-pubescent and young teenagers, including at least 30 images of pre-pubescent children with their genitals exposed to the camera. Other images depicted the children in underwear or exposing their naked buttocks to the camera.

"FERY6000"

The "Joey Carson" Instagram records contained WINCZUK's conversations with users other than the Worcester Victim. In February 2018, WINCZUK had a multi-day exchange with user "Cahya Kama Kholis/fery6000," ("Cahya/fery6000") who identified his location as Indonesia. Over the course of weeks, WINCZUK requested videos and pictures of little boys and offered $20,000 for nude pictures of Cahya /fery6000's little brother. He expressed an intention to travel to Cahya /fery6000 and said he wanted to commit sexual acts against the brother and other little boys. WINCZUK and Cahya /fery6000 exchanged multiple sexually explicit images of young boys and Cahya /fery6000 sent at least one video to WINCZUK. In one exchange, WINCZUK told "Cahya /fery6000" "I'm coming there… I am going to help you and sister. And you have to get the little boy. Send me videos." Cahya /fery6000 responded "No…send me money first." WINCZUK repeated "Send videos…little boy's (sic)." Cahya /fery6000 responded by sending a video of a pre-pubescent boy, naked on a bed, with the focus on his genitals as he clenched and unclenched his anus. WINCZUK demanded "new videos" and Cahya /fery6000 asked for "money first." Cahya /fery6000 quoted $10,000. WINCZUK demanded "just little boy's (sic)…white boys." During a back-and-forth conversation regarding

payment and the method to receive videos, WINCZUK asked for directions on how to connect with Cahya /fery6000 via WhatsApp and provided the ZTE phone number to Cahya /fery6000 so that they could connect that way.  WINCZUK asked Cahya /fery6000 "Do you have little boy's (sic) doing stuff?" Fery600 responded, "Like?"  In response, WINCZUK sent a photograph of a pre-pubescent boy, naked in the shower, with the water running.  The boy was looking into the camera and had his penis exposed.   WINCZUK also sent a picture of a young boy, approximately 12-13 years old.  The boy was lying on a bed, wearing a cartoon t-shirt and looking at an object in his hands.  He was naked from the waist down and his penis is exposed to the camera.  WINCZUK then expressed interest in performing oral sex on Cahya /fery6000's little brother, to which Cahya /fery6000 responded, "find another one, do not my brother." Winzuk said, "You have to get pictures of him nude…$20,000 for nude pictures of him." WINCZUK sent videos to Cahya /fery6000, including a February 10 video of an adult male penis penetrating the anus of what appears to be a pre-pubescent boy.  There are no faces visible in the video.

The Instagram return contained at least 35 images of child pornography depicting boys between the ages of approximately 6 and 13 with their genitals exposed to the camera, several engaged in sex acts. WINCZUK's account also contained six videos of boys lying on a bed being penetrated by an adult man. The videos, which appear to be from the same series, have a stamp reading "The Kids Club" boyxzed.net on them.  In some of the videos, the boy's face can be seen.  He is blindfolded.  The man's face is never seen.

## Argument

A. The defendant is subject to a 35 year mandatory minimum sentence on Count One.

Title 18, United States Code, Section 2251(e) provides for enhanced penalties for defendants with two or more prior convictions relating to certain federal offenses or to State offenses related to the sexual exploitation of children.[1] WINCZUK was previously convicted of sexual assault on a person between the ages of 13 and 16, NJ Rev Stat § 2c:14-2 (2010) and Distribution of Child Pornography, in violation of NJ Rev Stat §2C:24-4b(5)(a) (2010). Although the First Circuit has not addressed the definition of "related to sexual exploitation of children," the majority of circuits have held that this is more expansive than the position advanced by the defendant and encompasses conduct beyond that involving visual depictions of children.  See United States v. Mills, 850 F.3d 693, 697-98 (4th Cir. 2017)("[f]or the purposes of 18 U.S.C. § 2251, "sexual exploitation of children" means to take advantage of children for selfish and sexual purposes. Therefore, "sexual exploitation" encompasses all the behaviors identified in § 2251(e)'s provision regarding a single prior conviction enhancement—that is, "aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, [and] the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography"—and then some."); United States v. Smith, 367 F.3d 748, 750–51 (8th Cir.2004) (rejecting an argument that "sexual exploitation of children" refers only to child pornography and visual depictions of molestation); United States v. Randolph, 364 F.3d 118, 122 (3d Cir.2004)(Rejecting defendant's position that that "sexual exploitation of children" is a term of art relating exclusively to crimes involving the production of visual depictions of minors engaged in sexually explicit conduct.);  United States v. Smith, 367 F.3d 748, 751 (8th Cir. 2004) ("Although the term "sexual exploitation of children" is not defined in the statute, the term unambiguously refers to any criminal sexual conduct with a child.

---

[1] Since the defendant concedes that his prior convictions subject him to the enhanced penalty of not less than 25, not more than 50 years imprisonment, I will confine my argument to the disputed enhancement.

By its very nature, any criminal sexual conduct with a child takes advantage of, or exploits, a child sexually. The conduct need not be photographed to qualify.")

Wherever possible, statutes should be construed in a common sense manner honoring plain meaning and avoiding absurd or counter-intuitive results.  United States v. Carroll, 105 F.3d 740, 744 (1st Cir. 1997), quoting  O'Connell v. Shalala, 79 F.3d 170, 176 (1st Cir.1996), In re Thinking Machines Corp., 67 F.3d 1021, 1024–25 (1st Cir.1995), Sullivan v. CIA, 992 F.2d 1249, 1252 (1st Cir.1993).  The narrow interpretation proposed by the defendant would lead to the aberrant results.  For example, a defendant with two convictions for possession with intent to sell obscene material on Federal property, in violation of 18 U.S.C. §1460, a crime that does not involve minors at all, would be subject to a 35-year minimum, but a defendant who was convicted for rape of multiple children on State property would not be subject to the enhanced penalty.  See United States v. Sanchez, 440 F. App'x 436, 440 (6th Cir. 2011) (It is implausible that Congress intended to include so many prior federal offenses, but chose to restrict qualifying state offenses to child pornography production.)   The government respectfully requests the Court to follow the majority of circuits to decide this issue in favor of finding the 35-year sentence mandatory for defendants, like WINCZUK, with two qualifying prior convictions.

    B.  <u>The Court should utilize its significant discretion pursuant to 18 U.S.C. §3553 to impose a 35 year sentence on Count 1</u>

In addition to the mandatory minimum, the Court should use its discretion to find that a 35-year sentence is warranted on Count One.  A careful review of the factors enumerated in -Section 3553(a) shows that a 35-year sentence is sufficient but not greater than necessary to reflect the seriousness of the offenses, to provide just punishment, to promote respect for the law and afford adequate deterrence to criminal conduct, and to protect the public from the

11

defendant's future crimes. Any sentence less than that would undermine the principles of sentencing set forth in 18 U.S.C. § 3553(a).

1. <u>Nature and Circumstances of the Offense</u>

The nature and circumstances of the offense alone warrant the requested incarcerative sentence. A review of the defendant's social media accounts demonstrates that the vast majority of his contacts were young boys. In the instant offense, the victim identified himself as 11 years old within the first few lines of their communication. The photographs the victim shared of himself portray a small frame, baby-face child. The defendant portrayed himself as a trusted community member- a police officer, EMT, firefighter, in order to gain the trust of his victim. He utilized a picture of a young girl- not his sister, as he claimed- to lure in young boys who believed they were speaking to a girl who found them attractive. He targeted insecurities boys going through puberty, commenting on the size of their muscles, their genitals, their pubic hair. He repeatedly requested, coerced, and badgered the boys, including the Worcester victim, to send him images of their genitals. In many instances, such as the communications with "Matt," and Baller_koolkid12," he convinced the boys to send sexually explicit images of their genitals, which he then saved in his accounts. He sent images of a young female's genitals to "Matt" and "Gucci." With "Cahya Kama Kholis/fery6000," who appears to be an adult, he traded child pornography depicting young boys and offered Cahya/fery6000 $10,000 to create sexually explicit images of Cahya/fery6000's younger brother and expressed a desire to travel to and perform sexual acts on the young boy.

2. <u>The History and Characteristics of the Defendant</u>

WINCZUK has spent over ten years demonstrating to the Court that he cannot- or will not- abide by laws intended to protect children from sexual exploitation and will not follow conditions of release. After his indictment in 2008 alleging that he sexually assaulted four separate minors, he was not detained. In 2009, while on release pending the resolution of the 2008 sexual assault charges, WINCZUK committed a new offense and was charged with endangering the welfare of a child by file sharing child pornography, Camden County Superior Court accusation number 10-11-3136. He was subsequently sentenced to five years incarceration and detained at the New Jersey Adult Diagnostic & Treatment Center from December 2010 until his release on parole in March 2014. Upon his release to parole, WINCZUK was required to register as a Sex Offender and had monthly visits from the State Police in order to complete that registration. In addition to the typical conditions of parole for a sex offender, such as not committing another crime and no contact with minor children, a special condition of parole was imposed: WINCZUK was prohibited from owning, possessing or utilizing any type of emergency response equipment, including uniforms or police scanners, based upon a history of misusing such equipment. In January of 2016, he was returned to custody based upon a violation of that special condition of parole, including the possession of an EMS badge, a uniform badge inscribed "Woodlynn Fire Department Lieutenant," uniform name places inscribed "Jordan WINCZUK," and dog tags inscribed "Camden Police Narcotics Unit Det. WINCZUK." It is now clear that WINCZUK was using those props to gain the trust of the children he exploited.

In January 2017, WINCZUK was once again given an opportunity to live in the community while on parole. By June of 2017, WINCZUK had obtained the Kyocera smart

13

phone in violation of his conditions of parole and started communicating with "Matt," by December 2017 he purchased the ZTE smart phone and in January was using Instagram to solicit child pornography from multiple boys, including the Worcester victim. When the warrant was executed at his home in February 2018, WINCZUK was in possession of a police scanner, multiple Audubon NJ Emergency Medical Service badges and a shirt with the Woodlynne, NJ Fire Department patch.

WINCZUK's repeated violations of his conditions of release and commission of new crimes while on release and parole demonstrate that he is an ongoing danger to the community who will act on his impulses and continue to exploit children, notwithstanding supervision and the potential for immediate and significant sanctions should he violate either the law or conditions of release.

3. <u>The Need For The Sentence Imposed To Reflect The Seriousness Of The Offense, To Afford Adequate Deterrence To Criminal Conduct And To Protect The Public From Further Crimes Of The Defendant.</u>

The government has already addressed the gravity of the offense above and reiterates that a significant sentence of incarceration is appropriate to reflect the seriousness of WINCZUK's crimes. A forty-five year sentence of incarceration not only is appropriate but necessary to protect the public from further crimes by this this defendant. The government submits that the only way afford adequate deterrence in similar cases is to impose a sentence that will deter not only WINCZUK from further crimes but also other individuals with similar sexual interests in children.

4. <u>Application of the Guidelines</u>

The Government's proposed sentence of 35 years on Count 1 is at the low end of the GSR as calculated by probation (420-life) and is the minimum allowed by application of the sentencing provisions of 18 U.S.C. § 2251(e), as outlined above.

The Government notes that the defendant has disputed the Guideline Sentencing Range, objecting not only to the 35-year mandatory minimum but to the guideline enhancement for "relevant conduct" as defined by USSG §1B1.3(a)(1) as it relates to the exploitation of other individuals such as "Matt" and "fery6000." Due to the undisputed 25-year mandatory minimum, the defendant's position appears to be that a "guideline sentence" is 300-300 months. The sentence proposed by the Government, 35-years, would reflect an upward departure, which the Court has the discretion to impose. U.S.S.G. §5K2.0(a)(1)(B).

The Guideline Range, as calculated by the defendant, does not adequately take into consideration all of the circumstances surrounding the crimes perpetrated by the defendant. The Court should properly consider evidence of the defendant's communications with other individuals to determine whether the defendant is a "Repeat and Dangerous Sex Offender Against Minors" and consider it within the broad range of information bearing on the 'history and characteristics of the defendant." 18 U.S.C. §3553(a)(1).  "[i]f the defendant engaged in the sexual abuse or exploitation of a minor at any time (whether or not such abuse or exploitation occurred during the course of the offense or resulted in a conviction for such conduct) …an upward departure may be warranted." United States v. Woodward, 277 F.3d 87, 90 (1st Cir. 2002)

Section 4B1.5 provides two paths to increase the guidelines for defendant's whose instant offense of conviction is a covered sex crime and are not considered Career Offenders pursuant to

USSG §4B1.1.  §4B1.5(b) provides that, for a defendant engaged in a pattern of activity involving prohibited sexual conduct "the offense level shall be 5 plus the offense level determined under Chapters Two and Three; the criminal history category shall be the criminal history category determined under Chapter Four, Part A.  For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor. An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion. USSG §4B1.5(b), comment. (n. 4) The conduct involving "Matt" and "Fery6000" clearly fall within this definition. Using the defendant's calculation of the total offense level (38) + 5=43 – 3 (acceptance of responsibility), the defendant's total offense level would be 40/CHC IV, a guideline range of 360-life.

This provision does not apply to Mr. WINCZUK, however, because he has a prior conviction for a sex offense.  Because of that, his guidelines are governed by USSG §4B1.5(a). "The offense level shall be the greater of the offense level determined under Chapters Two and Three (38); or the offense level from the table."  Since the offense level determined by Chapters Two and Three is already greater, the offense level remains at 38 and the criminal history category is set as Category V.  In other words, the guidelines only consider his prior conviction and do not consider the uncharged victims of exploitation at all.  The defendant's guidelines remain at 262-327, after a three-level reduction for acceptance of responsibility.  It appears to be an absurd result that a defendant with no prior convictions who engages in a pattern of prohibited sexual conduct with minors would have a higher guideline range than a defendant with a prior

16

sex offense who also engages in a pattern of sexual conduct with minors.   The Court should find that this is an aggravating circumstance, not adequately taken into consideration by the Sentencing Guidelines, and impose a sentence greater than that described.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests this Court sentence the defendant to a term of imprisonment for 45 years; 35 years on Count One and a consecutive 10 years on Count 2, to be followed by a lifetime of supervised release, pursuant to the factors outlined in 18 U.S.C. §3553(a).  The government submits that this sentence is appropriate under the circumstances of this case, considering the defendant's particularly egregious crimes and his sexual exploitation of multiple minor victims.

                                      Respectfully submitted,
                                      RACHAEL ROLLINS
                                      United States Attorney

By:    */s/ Kristen M. Noto*
        KRISTEN M. NOTO
        DANIAL E. BENNETT
        Assistant U.S. Attorneys
        United States Attorney's Office
        595 Main Street
        Worcester, MA 01608

Dated: February 17, 2022

**Certificate of Service**

  I hereby certify that this document will be sent via ECF to counsel for the defendant, Jordan WINCZUK.

            */s/ Kristen M. Noto*
            Kristen M. Noto
            Assistant U.S. Attorney

Dated: 2/17/2022